In re REEVES' ESTATE.    (No. 7209.)

Court of Civil Appeals of Texas.   Austin.
April 18, 1928.

Rehearing Denied June 13, 1928.

1. Marriage ☞34—Fraud in procurement of license does not vitiate marriage (Rev. St. Kan. 1923, 23—101, 23—120, 23—121, 23—122, 23—123).

Fraud in procurement of marriage license does not vitiate marriage, but merely subjects guilty party and officers to the prescribed penalties under Rev. St. Kan. 1923, 23—101, 23—120, 23—121, 23—122, and 23—123, prohibiting marriage of epileptics or insane or feeble-minded persons.

2. Marriage ☞7—Marriage of insane testator, entered into in Kansas, held wholly void in probate proceedings, where insanity continued without lucid interval (Rev. St. Kan. 1923, 60—1515).

In proceedings to probate will of insane testator, marriage of testator entered into in state of Kansas *held* wholly void under Kansas law, where insanity continued until death without lucid interval, since Rev. St. Kan. 1923, 60—1515, making marriages of persons incapable of contracting from want of age or understanding voidable, does not apply to marriages of insane persons, in view of Kansas decisions.

On Motion for Rehearing.

3. Wills ☞399—Validity of testator's marriage, on ground of which will contest was dismissed, held reviewable without assignments of error.

Where action of trial court in probate proceedings in dismissing will contest was based on admission of insanity of testator and undisputed evidence as to status of marriage under Kansas laws, question whether marriage was void could be considered on appeal, as involving fundamental error presented by record, though no assignments of error were filed.

4. Wills ☞399—Reviewing court, though bound by record showing of laws of Kansas in determining validity of marriage of insane testator, could go outside record in construing applicable statute.

In determining validity of marriage of insane testator under Kansas laws, reviewing court was bound by record showing of laws of Kansas, but, in construing applicable statute as original question, could examine authorities of other states.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Proceedings by Anita R. Reeves for the probate of the will of Earl W. Reeves, deceased, contested by the surviving father, brothers, and sisters of the testator. From a judgment of the district court, on appeal from the county court, admitting the will to probate and dismissing the contest, contestants appeal. Reversed and remanded.

H. S. Groesbeeck, of San Antonio, for appellants.

Henne & Fuchs, of New Braunfels, and Goeth, Webb & Goeth, of San Antonio, for appellee.

McCLENDON, C. J. Appeal from judgment of the district court (in an appeal from the county court), admitting to probate the will of Earl W. Reeves, deceased, and dismissing a contest of the surviving father, brothers, and sisters of the testator, on the ground that contestants had no interest in the estate. All of the property of the testator was personalty, and therefore passed, independently of the will, to proponent, Anita Reudrick Reeves, surviving wife of testator, there being no children of the marriage.

The only question the appeal presents is whether the marriage of testator and proponent was absolutely void under the laws of Kansas, by reason of the insanity of deceased at and continuously subsequently to the date of the marriage. The trial court held the marriage voidable only, and immune from attack after the death of one of the spouses. If this ruling is correct, the trial court's judgment should be affirmed; if, on the other hand, such marriage was absolutely void, the judgment should be reversed and the cause remanded.

In the course of the trial, counsel for proponent, while not admitting "that the deceased was insane at the time of the execution of the will, and that he thereafter continued to be up to the time of his death," agreed that "the court may take as true your (contestants') pleadings (asserting such insanity) for the purpose of ruling on the question before the court." Under this agreement, it is unnecessary to detail the evidence upon this issue, or to pass upon the conclusiveness of its effect. It sufficiently appears from the record that the trial court assumed the insanity of the testator at the time of the marriage, and continuously thereafter until testator's death, holding that such marriage was, under the laws of Kansas, not void, but voidable only.

The Kansas law upon the subject, as proved in the record, is embodied in the case of Powell v. Powell, 18 Kan 371, 26 Am. Rep. 774; the testimony of Hon. L. E. Goodrich (a lawyer 40 years of age, with 11 years' practice, a former county attorney of Labatte county, Kan., and at the time he testified city attorney of Parsons); and certain sections of the

Revised Annotated Statutes of Kansas of 1923 hereafter noted.

Powell v. Powell clearly and unequivocally holds that insanity of one of the spouses renders the marriage absolutely void, requiring no decree of annulment to so establish it. The holding, based upon the common law, is rested upon the ground that "concurring assent of the two minds was wanting." The court say:

"The plaintiff is as free from the defendant as if the court below had pronounced a decree of nullity, as no judgment was necessary to restore the parties to their original rights. The fitness and propriety of a judicial decision pronouncing the nullity of such a marriage, is supported, because conducive to good order and decorum, and to the peace and conscience of the party seeking it. Weightman [Wightman] v. Weightman [Wightman], 4 Johns. Ch. [N. Y.] 343; Rawdon v. Rawdon, 28 Ala. 565."

A careful reading of the opinion shows that this question was essential to the decision in the case.

The testimony of Mr. Goodrich is to the effect that this decision has never been questioned, and that its pronouncement is the law of Kansas. There was no evidence to controvert this testimony other than as it may be affected by the statutes.

Article 60—1515 of the 1923 Statutes, with the bracket citations and annotations, reads:

"60—1515. *Void Marriages.* When either of the parties to a marriage shall be incapable, from want of age or understanding, of contracting such marriage, the same may be declared void by the district court, in an action brought by the incapable party; but the children of such a marriage, begotten before the same is annulled, shall be legitimate. Cohabitation after such incapacity ceases shall be sufficient defense to any such action. (L. 1909, ch. 182, § 677; May 29.) Annotations to Old Code, § 648.

"Section applies only to incapables; relief afforded independent of statute. Powell v. Powell, 18 Kan. 371, 381 [26 Am. Rep. 774]. Age refers to age of consent fixed by common law. Browning v. Browning, 89 Kan. 98, 101 [130 P. 852, L. R. A. 1916C, 737, Ann. Cas. 1914C, 1288].

Powell v. Powell was decided in 1877; and it appears from some of the bills of exceptions in the record that there was some confusion in the minds of counsel and the court as to whether section 60—1515 was passed originally in 1909, and therefore was not taken into consideration in the case of Powell v. Powell. The trial court evidently concluded that the statute was passed subsequently to the Powell opinion, and held that under it the marriage was voidable and not void.

It will be noted that in the annotations reference is made to "Old Code, § 648," and to Powell v. Powell and Browning v. Browning, 89 Kan. 98, 130 P. 852, L. R. A. 1916C, 737, Ann. Cas. 1914C, 1288. There is not in the state library any compilation of Kansas laws since its statehood of earlier date than 1879, and we have not had access to the "Old Code." The compiled laws of Kansas of 1879, however, give section 60—1515 in its exact language under the following numerals: "(4187) § 648." The title page of this compilation reads:

"Compiled Laws of Kansas 1879. Being a compilation of all the laws of a general nature based upon the General Statutes of 1868 (embracing all of said statutes still in force) together with subsequent enactments, including the session laws of 1879, with references to decisions."

The same section numbered (648) is carried in bracket numerals in subsequent compilations of the Kansas laws. While these compilations are not a part of the record in this case, it appears conclusively to us that the decision in Powell v. Powell was not only rendered subsequently to the original enactment of section 60—1515 (Old Code, § 648), but that that article is expressly construed in the opinion in the following language:

"Sec. 648 of the Code (Gen. Stat. p. 759) does not in any manner restrict the plaintiff from prosecuting or instituting her action to annul a void marriage. Said section applies only to incapables, who are unable to contract marriage from want of age, or understanding. Independently of the provisions relating to divorce, the district court has full jurisdiction to afford the plaintiff requisite relief. If she wishes no judicial determination of the question, and the defendant was insane at the time of the marriage, and has had no lucid intervals since, she may treat such marriage as wholly void."

It is apparent from this quotation that the Supreme Court of Kansas construed section 60—1515 as not having application to insane persons, but only to those who, by reason of insufficient age or want of understanding, were incapable of contracting marriage. Independently of the binding authority of this holding, it seems to us manifestly sound. This section is a part of chapter 60, art. 15, the chapter relating generally to civil procedure, and the article to divorce and alimony; whereas the general subject of marriage is embraced in article 1 of chapter 23 on domestic relations. The manifest purpose of the article was to place marriage in the same category as contracts of minors, giving to the "incapable party," that is, the party "incapable, from want of age or understanding," alone the right to avoid it. If it had been the purpose to apply the rule enacted in the article to insane persons, more apt words would we think have been used to express it, such, for example, as "mental capacity." "Want of understanding" is usually applied, not to insane persons, but to those of tender years. The two expressions "want of age" and "want of understanding" are not used as entirely synonymous, but they are

manifestly used in a related sense. The former applies to an arbitrary age limit. In this article it "referred to the age of consent to marriage as fixed by the common law, since there was no statute whatever relating to the age of the groom or bride." Browning v. Browning, 89 Kan. 101, 130 P. 852, L. R. A. 1916C, 737, Ann. Cas. 1914C, 1288. The latter applies to "want of understanding" in fact by reason of age or tender years, independently of any arbitrary age limitation.

The following sections of chapter 23 were introduced:

"23—101. *Nature of Marriage Relation.* The marriage contract is to be considered in law as a civil contract, to which the consent of the parties is essential; and the marriage ceremony may be regarded either as a civil ceremony or as a religious sacrament, but the marriage relation shall only be entered into, maintained or abrogated as provided by law. (L. 1867, c. 84, § 1; May 27.)"

"23—120. *Marriage by Epileptics or Insane or Feeble-Minded Persons.* No woman under the age of forty-five years, or man of any age, except he marry a woman over the age of forty-five years, either of whom is epileptic, imbecile, feeble-minded or afflicted with insanity, shall hereafter intermarry or marry any other person within this state. It shall be unlawful for any person to marry any such feeble-minded, imbecile or epileptic person, or anyone afflicted with insanity. Children born after a parent was insane shall not marry except under the above-named conditions, unless the parent or parents of such children shall have been discharged from the state hospital for insane or any other legally constituted institution for the treatment of the insane more than nine months before the birth of the child, as cured and remained cured for a period of twenty years after such discharge. (L. 1903, ch. 220; § 1; L. 1915, c. 239, § 1; L. 1919, c. 230, § 1; June 17.)"

"23—121. *Issue of License to Such Persons.* No officer authorized by law to issue marriage licenses in this state shall hereafter issue such a license to any persons either of whom is afflicted with any of the diseases mentioned in section 1 of this act, knowing them to be so afflicted, unless the female party to such marriage is over the age of forty-five years, but said officer shall in all cases ask of the party applying for a marriage license and require him to make answer thereto in writing under oath to the following question: Have you or has the person you are expecting to marry ever been afflicted with epilepsy, imbecility, feeble-mindedness, or insanity? (L. 1903, ch. 220, § 2; L. 1919, ch. 230, § 2; June 17.)"

"23—122. *Performing Ceremony in Such Cases.* No clergyman or officer authorized by law to solemnize marriages within this state shall hereafter perform a marriage ceremony uniting persons in matrimony either of whom is afflicted with epilepsy, imbecility, feeble-mindedness, or insanity, knowing them to be so afflicted, unless the female party to such marriage is over the age of forty-five years. (L. 1903, c. 220, § 3; June 1.)"

"23—123. *Penalty for Violation of Act.* Any person knowingly violating any of the provisions of this act shall upon conviction thereof be punished by a fine of not more than one thousand dollars, or by imprisonment in the state's prison for not more than three years, or by both such fine and imprisonment. (L. 1903, c. 220, § 4; June 1.)"

Section 23—101 appears to have been carried forward from the laws of 1867, and whatever effect it might have upon the controversy is foreclosed in Powell v. Powell. Assuming from the bracket citations that sections 23—120 to 23—123 were passed originally in 1903, we are clear in the view that they in no way affect the decision in Powell v. Powell. These articles are manifestly based upon eugenic considerations, and have no bearing upon the effect of a marriage entered into at a time when one of the parties was mentally incapable of the consent requisite to its validity. These articles forbid the marriage of a person who is "epileptic, imbecile, feeble-minded, or afflicted with insanity." It is to be noted, however, that the inhibition does not apply where the afflicted party is the woman and she is over 45 years of age. It is further to be noted that the inhibition is not directed against persons mentally incapable by reason of insanity from contracting marriage, but against all persons "afflicted." It is to be still further noted, that the inhibition also applies to children born after the parent was insane, with certain noted exceptions. The purpose of these sections is manifest. It is to prevent, on eugenic grounds, the marriage of persons coming within its inhibitions by restrictions in the issuance of marriage licenses, and by penalty for its violation. The sections have no bearing upon the effect of marriages entered into by persons incapable by reason of insanity from giving the requisite consent.

[1] Other cited provisions of chapter 23 prescribe regulations for the issuance of marriage licenses. We think it unnecessary to quote these provisions. Contestants contend that under them the marriage was void, in that the license was fraudulently procured. We are clear in the view that fraud in procurement of the license would not vitiate the marriage, but would merely subject the guilty parties and officials to the prescribed penalties. This is in accordance with the general holdings upon this subject, and in principle with the Kansas decision of Browning v. Browning, above, and authorities there cited.

[2] In other jurisdictions insanity of a spouse as affecting validity of marriage presents an interesting question, and it may be conceded that the modern tendency is to hold all such marriages voidable only. But we are concerned here only with the Kansas Law upon the subject.

We hold that under the law of Kansas marriage with an insane person, the insanity continuing until death, without lucid interval, is wholly void.

The trial court's judgment is reversed, and

the cause remanded for further proceedings in accordance with this holding.

Reversed and remanded.

#### On Motion for Rehearing.

We will note two points made in appellee's motion for rehearing, which are substantially, as follows:

(1) We should not have considered the issues raised in appellant's brief because no assignments of error were filed in the trial court, and the record does not present fundamental error.

(2) We should not have gone out of the record to determine the laws of Kansas.

[3] Upon the first point: The only issue presented in the appeal was the correctness of the trial court's action in dismissing appellant from the case. The record shows conclusively that this action was based upon an admission of appellee as to the insanity of Earl W. Reeves, and unconflicting evidence as to the status of such marriage under the laws of Kansas. The question thus presented is one we think fundamental in its nature, going to the very right of appellants as litigants in the case, and the error committed by the court is apparent upon the face of the record.

[4] Upon the second point: We concede we are bound by the record showing of the laws of Kansas. As stated in our original opinion, the evidence upon that subject consists of a deposition of a Kansas attorney unequivocally pronouncing the marriage of an insane person void under the laws of that state; the opinion in Powell v. Powell clearly holding to the same effect; the testimony of this attorney that that decision has never been modified; and certain statutes of Kansas quoted in our original opinion. Our interpretation of this evidence, all of which is taken from the record, is that it is conclusive to the effect that the marriage in question was void under the laws of Kansas, if Reeves was insane at the time, and so remained until his death. The identity of section 60—1515 with Old Code, § 648, appears from the language of Powell v. Powell, quoted in our original opinion, independently of the annotation references not introduced in evidence in the trial court. The quoted language leaves in our mind no substantial doubt that the court had before it the same statute introduced in evidence as section 60—1515.

But, if the record left in doubt the conclusiveness of Powell v. Powell as a construction of article 60—1515 under Old Code § No. 648, it would become our duty to construe the article and its effect upon the decision in Powell v. Powell as an original question. And further, it may be noted appellee strenuously urges in her motion for rehearing that, even though the Kansas case be regarded as construing article 60—1515, "this court cannot be bound by a construction of the act so grossly erroneous and unreasonable." In construing this article as an original question, we are certainly not bound by the record, but may freely examine the authorities of other states, not as binding upon this jurisdiction, but as persuasive. In making such investigation we would, in connection with adjudicated cases, be free to examine the text of such statutes as were being considered. In our original opinion we expressed the view that independently of its binding authority as construing the act in question, the holding in Powell v. Powell upon this issue seemed to us sound. We adhere to that view as well as to the view that Powell v. Powell appears from the record to have been adjudicated in the light of section 60—1515.

The motion is overruled.

Overruled.